[Crim. No. 4603. Second Dist., Div. One. July 3, 1951.]

THE PEOPLE, Respondent, v. WILLIAM RENEK,
Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Gilbert Harelson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged with a violation of subdivision 2, section 337a of the Penal Code in

that he did keep and occupy a store at 248 East Fifth Street in the city of Los Angeles, with books, papers, paraphernalia, etc., for the purpose of registering and recording bets on horse races.

Following a plea of not guilty and waiver of trial by jury, defendant was convicted by the court. His motion for a new trial was denied, proceedings were suspended and he was granted conditional probation. From the order denying his motion for a new trial defendant prosecutes this appeal.

Because it is urged as a ground for reversal that the evidence is insufficient to support the decision of the court and that the same is contrary to the law and the evidence, it becomes necessary to narrate the factual background which gave rise to this prosecution.

The record reveals that on August 8, 1950, Los Angeles Police Officers Chavez and Pendergast observed several men with scratch sheets and racing forms in their hands, in the immediate vicinity of a grocery store at the above address. The officers saw several men go into the store, talk with defendant and then leave. One man was observed going into the store where he handed the defendant, a clerk therein, "what appeared to be currency and also a piece of white paper." Defendant put the currency in his pocket, folded the piece of paper and placed it in a large box in the store. At different times, other men would enter the store, talk to defendant, and following each of these conversations and the departure of the men in question, defendant would go to the rear of the store.

After observing these activities for some 45 minutes, Officer Chavez entered the store and ordered a Coca Cola from defendant. While Chavez was drinking the same the telephone in the back room of the store rang. Defendant thereupon went to the rear of the store. He returned in a few moments and put something in the same box in which he had previously placed the folded piece of paper. The officers examined this box and found it also contained rolls of toilet tissue. In the center tubes of two of the rolls were 38 individually folded pieces of paper, each of which was a betting marker.

It was stipulated that Officer Pendergast was an expert on bookmaking practice in Los Angeles County. On one of the 38 betting markers was the figure "3" and the letter "D," followed by the word "Tonita." On the same line and following the word "Tonita" was "XIX." In Officer Pendergast's opinion the figure "3" referred to the 3d race, the

"D" to Del Mar, "Tonita" to a horse, and the "XIX" to a one dollar place bet. According to a scratch sheet for August 8, 1950, there was a horse by the name of "Tonita" running in the third race at Del Mar on that date. On the second line of this same betting marker was the figure "8" followed by "S.A." and the word "Props." The word "Props" was followed by the figures "1-1" and the letter "X." Underneath this was the word "Joe" and the initial "M." Officer Pendergast stated that this second line was a one dollar to win and one dollar to place bet on a horse by the name of "Props" running in the eighth race at Saratoga. The word "Joe M." was the name of the bettor on the two races. That there was a horse by the name of "Props" running in the eighth race at Saratoga on August 8, 1950, according to a scratch sheet for that date, in the possession of the officer.

Officer Pendergast compared each of the 37 other betting markers found in the tissue rolls with a scratch sheet for August 8, 1950, and found that each horse listed on those markers was running at one of the various tracks in the country on that date.

Also in the store were scratch sheets and racing forms, a memorandum book, a notebook and 40 or 50 small pieces of blank paper. Defendant had two pieces of blank paper in his shirt pocket.

Officer Pendergast testified that some of the papers and devices commonly used by bookmakers are scratch sheets, racing forms, entries in the daily newspapers, pieces of paper, pens and pencils, and telephones. That the scratch sheets are issued daily on the races running in the United States. They contain the latest scratches, the names of the horses running in the various races at the various tracks, the names of the jockets and their post positions, the probable odds, and tips on long shots. They also contain the previous day's results on the races throughout the United States. That bookmakers use these scratch sheets to see that the horses on which they accept wagers are running and to determine the race in which they are running in order that "they won't be past posted on a race."

That after a bookmaker receives a bet he records it by writing the name of the horse, the amount of the bet, the name, initials, or code name of the bettor, and whether the bet is to win, place, or show, on a betting marker. That "If the bet is not too large and it doesn't seem like a sure thing they (the bookmakers) will hold their own action by hiding the

betting markers'' and later checking them against the results. In these cases the bookmaker will make the payoffs himself. However, if the bet he receives ''is believed to be too large for him to handle, he phones it out to somebody else.''

Defendant testified in his own behalf and denied that he carried on any bookmaking activities. He stated that he had been employed as a clerk at the store for approximately one month. He saw the officers remove the betting markers from the rolls of tissue but stated that he had never seen the markers prior to that time. However, the two tissue rolls in which the betting markers were found were on the top row of the box and he admitted that he had looked in this box on prior occasions. Defendant also admitted that the phone rang while Officer Chavez was in the store but denied that he answered it or went to the rear of the store. According to defendant's testimony, Officer Chavez answered the phone. Defendant said that the racing forms and scratch sheets in the store were for sale; however, the store did not sell newspapers or magazines.

■  On appeal by an accused from a judgment of conviction the evidence is to be viewed in the light most favorable to the prosecution (*People* v. *Carothers,* 77 Cal.App.2d 252, 253 [175 P.2d 30]; *People* v. *Cayer,* 102 Cal.App.2d 643 [228 P.2d 70]). ■  With this rule in mind, we conclude that the circumstances shown by the evidence above narrated reasonably justify the finding of the trial judge that appellant was occupying the premises in question for a purpose proscribed by subdivision 2, section 337a of the Penal Code. A causal connection between paraphernalia found on the premises and appellant, which must be shown in a prosecution such as this, we are satisfied was established by evidence which would reasonably justify an inference that appellant occupied a place where such devices were utilized by him for the purpose of registering or recording bets. In this regard, it is significant that the blank pieces of paper found in appellant's shirt pocket were similar to the type of paper used for the betting markers, as well as being similar to the 40 or 50 small pieces of blank paper found in the store.

■  The purpose for which the place was being used or occupied need not be established by direct evidence, but may be gathered from all the surrounding circumstances shown by the evidence (*People* v. *Newland,* 15 Cal.2d 678, 683 [104 P.2d 778]; *People* v. *Barnhart,* 66 Cal.App.2d 714, 721 [153 P.2d 214]; *People* v. *Ines,* 90 Cal.App.2d 495, 499 [203 P.2d

540] ). ■ Appellant's argument that the circumstances shown herein may reasonably be reconciled with his innocence is unavailing because if the circumstances reasonably justify a finding of the trier of facts, our opinion that they might also reasonably be reconciled with the innocence of the accused will not warrant interference by us with the determination of the duly constituted arbiter of the facts (*People* v. *Newland, supra,* p. 681).

■ The function of an appellate tribunal is to correct errors of law. ■ The trier of facts is the sole judge of the weight or intrinsic value of the evidence as well as of the credibility of witnesses. ■ We are not empowered to review evidence, except where, on its face, it may justly be held to be insufficient to support the ultimate issue involved, or as inherently improbable, in which case it is not a review of a question of fact, but purely one of law. ■ And, before evidence may be said to be unbelievable *per se,* it must involve, we think, a claim that something has been done which it would not seem possible could be done under the circumstances described. No such stricture can reasonably be placed upon the evidence herein relied upon by the prosecution. We find nothing in *People* v. *Woods,* 35 Cal.2d 504, 508 [218 P.2d 981], or *People* v. *Gory,* 28 Cal.2d 450, 455 [170 P.2d 433], relied upon by appellant, that militates against what we have herein stated when applied to the facts and issues with which we are confronted in the instant case.

■ Appellant's contention that there was no proof of any horse races being run on the day in question is answered by the Supreme Court in the case of *People* v. *Vertlieb,* 22 Cal.2d 193, 197 [137 P.2d 437], wherein it was held that if it be established by evidence that the accused occupied a room or place with paraphernalia for the purpose of registering or recording bets, it is immaterial whether the contest or contests upon which the bets were made were actually held. The statute prohibits the registering or recording of bets upon any contest or *purported* contest. (See, also, *People* v. *Warnick,* 86 Cal.App.2d 900, 902 [195 P.2d 552].)

Appellant's next contention is that it was prejudicial error to admit into evidence all of the People's exhibits, consisting of the betting paraphernalia found on the betting premises and a scratch sheet. It is urged that there was no showing of any knowledge on the part of appellant of any of the papers contained in Exhibit 1 (small pieces of blank paper hereinbefore referred to, and similar to two pieces of blank paper

found in appellant's shirt pocket). That "there was no showing of any handwriting—for aught he (appellant) knows, anyone from the street or anywhere else could have placed them there."

In the trial court appellant objected to the introduction of the foregoing exhibits only on the ground that no corpus delicti had been established. On appeal, for the first time, he urges their inadmissibility on a ground not presented to the trial court, namely, that there was a lack of foundation. Appellant may not abandon the objection he made in the trial court and demand a reversal on grounds raised for the first time in the reviewing court. To warrant consideration by an appellate tribunal of an objection to evidence, it is necessary that the precise ground for its exclusion must have been clearly specified to the trial court (*People* v. *Goff*, 100 Cal.App.2d 166, 172 [223 P.2d 27] ; *People* v. *Calliham*, 81 Cal.App.2d 928, 933 [185 P.2d 342] ; *People* v. *Agajanian*, 97 Cal.App.2d 399, 405 [218 P.2d 114] ).

The objection that the corpus delicti was not proven is without merit. It was abundantly established by proof of the presence of all the paraphernalia for registering and recording bets in the room or place occupied by appellant, which constitutes the major element of the offense herein charged (*People* v. *Mason*, 37 Cal.App.2d 407, 409 [99 P.2d 567] ).

Appellant's objection, raised for the first time on appeal, that it was error to admit the exhibits because there was no showing of any connection with him, is untenable in view of the evidence received and our discussion heretofore of its sufficiency to sustain the conviction. The facts and circumstances present in the case at bar clearly distinguish it from the case of *People* v. *Smith*, 55 Cal.App. 324 [203 P. 816], cited by appellant.

Finally, appellant contends it was erroneous to introduce into evidence the scratch sheet which Officer Chavez brought with him to court, and as appellant states, "on which he based his information as to the existence or non-existence of horseraces, or purported horseraces." The objection is grounded on the claim that there was no foundation for its admission. The exhibit was properly received in evidence, not for the purpose of establishing the truth of what was presented therein, but for the purpose of establishing that the data on the betting markers were not without meaning, but were part

of a system used by bookmakers generally. Directly in point is the language used by the Supreme Court in *People* v. *Vertlieb, supra,* at page 196.

For the foregoing reasons the order denying defendant's motion for a new trial is affirmed.

Doran, J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 2, 1951.