[Crim. No. 4678. Second Dist., Div. Three. Nov. 9, 1951.]

THE PEOPLE, Respondent, v. CHARLES BATTAGLIA, Appellant.

John J. Bradley and Max Solomon for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of violating section 337a, subdivision 2, of the Penal Code, in that, he did unlawfully keep and occupy a room with books, papers, and paraphernalia for the purpose of recording and registering bets on horse races. Trial by jury was waived. Defendant was adjudged guilty. His motion for a new trial was denied. Upon the hearing of defendant's application for probation, proceedings were suspended and defendant was granted probation upon the condition that he serve two months in the county jail. His notice of appeal states that he appeals from the judgment and from the order denying his motion for a new trial. Since judgment was not pronounced, the purported appeal from a judgment will be dismissed. (*People v. Steccone*, 36 Cal.2d 234, 235 [223 P.2d 17].)

Appellant contends that the evidence is insufficient to support the decision of the court.

It was stipulated that the judge might consider the testimony given at the preliminary examination. The case was submitted upon that transcript, the exhibits referred to therein, and the testimony given by defendant at the trial.

On November 8, 1950, about 11:30 a.m., an investigator for the district attorney, a deputy sheriff and two employees of the telephone company went to a vacant store building at 3517 East Slauson Avenue in Maywood and found therein four telephones—two main lines and two extensions. The "ringers" (or telephone bells) were either disconnected or cut. About 2 p.m. on that day, the investigator and the deputy sheriff went to an apartment building at 5890 Maywood Avenue which is just around the corner and about 150 feet from the vacant store building. When they entered the kitchen of apartment 17 in that building, they saw the defendant sitting at a table and he had a telephone receiver in his hand. Upon the table there were several pieces of blank paper, a pencil, a scratch sheet, and two telephones from which the number plates had been removed. He was alone in the apartment. On the stove in the kitchen there was a radio which was not turned on. In the drawer of the stove there was a piece of white paper, approximately 7 inches by 12 inches, upon which there was pencil writing. The defendant said he had been in the apartment two days, that no other person had been in there on that date, that he had rented the apartment from a fellow known to him as "Powers" for $70 a month, and that Powers gave him a key to the apartment. The defendant handed a key to the investigator who unlocked

the apartment door with it. About 15 minutes after the officers entered the apartment, the two employees of the telephone company went to the apartment, where the officers were, and investigated the telephone installation. The telephone equipment in that apartment was connected with the telephones in the vacant store building but the connection was not made or authorized by the telephone company. The telephones in the apartment were "working on" the telephone numbers of the telephones in the vacant store. The two telephones furnished a "rotary service," that is, if a line is busy an incoming call will automatically rotate to the other line.

The officers were in the apartment about 45 minutes and during that time the telephone rang approximately 10 times and each time it rang someone answered it, but the callers hung up the receiver except one time when the investigator answered the telephone. On that occasion the caller said, "Mucho Hosso have won," and "It is kind of rough" and "Is this Charley?" and "It doesn't sound like him."

It was stipulated that the investigator for the district attorney was qualified as a bookmaking expert. With reference to the piece of paper with the pencil writing on it which was found in the stove, he testified that he would call it a betting marker. He also testified that certain words and numbers on the piece of paper indicated the names of horses, the amounts bet on the horses, and the amounts won; that, in his opinion, the initials "H," "J," and "P," on the betting marker indicated the names of persons who placed the bets; that the scratch sheet showed that horses which had the same names as the names on the betting marker were running on that date at certain race tracks; that a circle in pencil writing around a horse's name on the scratch sheet indicated that that horse won the race; that the scratch sheet showed that a horse by the name of "Mucho Hosso" was running in a race on that date; and that the name "Mucho Hosso" was also on the betting marker.

Defendant testified that the figures on the betting marker were bets which the defendant himself made "to Las Vegas" and that none of the bets had been made in California; that he was betting with three persons in Las Vegas because one man would not take all his bets; and the initial "H" appearing on the betting marker "is" one of the fellows he was betting with. A telephone bill directed to "Philip Dunn Enterprises" was found by the officers in the vacant store, and it indicated that calls had been made to Las Vegas.

Appellant contends, as above stated, that the evidence is not sufficient to support the decision of the court. He argues that no evidence was presented that he recorded any bets other than his own which he placed by telephone "to Las Vegas"; that no effort was made by the prosecution to show in rebuttal that Exhibit "2" (the betting marker) was anything but a recordation of appellant's own bets; that, in the absence of any evidence to the contrary, it must be conceded that said exhibit is a record of appellant's own bets. The information herein does not charge that defendant recorded a bet. The charge is that he occupied a room with paraphernalia for the purpose of recording bets. ██ If the defendant did record a bet which had been placed with him, that, of course, would be an important circumstance in determining defendant's purpose in occupying the room. A violation of said section 337a, subdivision 2, of the Penal Code "is complete when it is shown that the accused occupied a place with papers and paraphernalia for the purpose of recording bets on horse races." (*People* v. *Abraham,* 67 Cal.App.2d 425, 427 [145 P.2d 450].) The judge was not required to find in accordance with the testimony of the defendant to the effect that he recorded his own bets. ██ The purpose for which a place is occupied need not be established by direct evidence but it may be determined from a consideration of all the circumstances shown by the evidence. (*People* v. *Renek,* 105 Cal.App.2d 277, 281 [233 P.2d 43].) In view of the testimony of the bookmaking expert that the initials on the betting marker indicated the names of persons who had placed the bets, and in view of the unusual circumstances herein with respect to the two telephones in defendant's apartment, the judge could have found reasonably that said Exhibit "2" was a record of bets placed with defendant.

██ Irrespective, however, of whether the defendant did record a bet, the evidence was sufficient to support a finding that he occupied a room with paraphernalia for the purpose of recording bets. He was occupying the apartment and he had a key to it. Betting paraphernalia was in the kitchen. A betting marker was concealed in the kitchen stove. The two telephones on the kitchen table in front of defendant were "rotary" telephones from which the number plates had been removed, and they were unauthorized telephone extensions from two main-line telephones, without bells, in a vacant store on another street. It could be inferred that defendant had knowledge of the unusual and unauthorized telephone

connection between his apartment and the vacant store. There were no numbers on the telephones in his apartment, and he testified that he telephoned to Las Vegas in making his own bets. It is to be assumed that, in making the long distance calls, he was required to state the number of the telephone from which he was calling. The contention of appellant is not sustainable.

The purported appeal from an alleged judgment is dismissed. The order denying defendant's motion for a new trial is affirmed.

Shinn, P. J., and Vallée, J., concurred.