[Civ. No. 21745. Second Dist., Div. Two. Oct. 24, 1956.]

LORETTA L. SIMPSON, Appellant, v. THE CITY OF SANTA MONICA et al., Respondents.

A. Brigham Rose for Appellant.

Robert G. Cockins, City Attorney, Robert D. Ogle, Assistant City Attorney, and James W. Shumar, Deputy City Attorney, for Respondents.

FOX, J.—In January, 1955, the police chief of the city of Santa Monica issued plaintiff permit Number 105 to operate a rock steam bath and massage parlor at 2815 Pico Boulevard. On May 20, 1955, after an investigation, the chief revoked[1] the permit. Five days later plaintiff duly appealed[2] by requesting a hearing before the city council for a restoration of the permit. The city council held such hearing on June 14, 1955. Plaintiff had been present when the hearing date was set. Subsequently a letter was sent to her advising her of the time and place. She was neither present in person nor represented by counsel at the hearing. At the conclusion of the hearing the city council voted to sustain the action of

[1]Section 6124 of the Santa Monica Municipal Code provides as follows: "REVOCATION OF PERMIT. Any permit issued by the chief of police pursuant to this code may be suspended or revoked, by the chief of police when it shall appear that the business of the person to whom such permit was issued has been conducted in a disorderly or improper manner, or in violation of any statute of the state, or ordinance of this city, or any provision of this code, or that the person conducting said business is of unfit character to conduct the same, or *that the purpose for which the permit has been issued is being abused to the detriment of the public, or that the permit is being used for a purpose different from that for which it was issued . . .*" (Emphasis added.)

[2]Section 6126 of the Santa Monica Municipal Code reads as follows: "RIGHT OF APPEAL. Any person aggrieved by the action of the Chief of Police or the City Manager in suspending or revoking any such permit or license may appeal to the City Council by filing a written notice thereof with the City Clerk within ten days from the date of mailing notice of such action. The Council shall make a decision within thirty days from receipt of the notice by the City Clerk, and the decision of the Council, after a hearing on the appeal, upon notice to the permittee or licensee shall be final and conclusive."

the chief in revoking the permit, and authorized the mayor to sign proper findings.[3]

By her amended and supplemental complaint, plaintiff seeks to have her permit restored. She incorporated in her pleading a transcript of the proceedings before the city council. The demurrer of the city and the chief of police was sustained without leave to amend. The action was thereupon dismissed. Plaintiff appeals from the judgment of dismissal.

█ Plaintiff's position is that the entire evidence before the city council was hearsay. She then argues, relying on *Walker* v. *City of San Gabriel,* 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383], and *Desert Turf Club* v. *Board of Supervisors,* 141 Cal.App.2d 446, 455 [296 P.2d 882], that hearsay evidence alone is insufficient to support the revocation of her permit. Plaintiff, however, misconceives the state of the record. The evidence before the city council was not entirely hearsay. Officer Tom, who was assigned to investigate plaintiff's operations, was personally present at the hearing before the city council and testified. True, his report, or at least a part thereof, was read at this hearing. But he testified that the report would be his statement as to the investigation that he made in this matter. Hence he adopted the report as his testimony and vouched for its correctness. Furthermore, he was present and available for cross-examination had plaintiff been present or represented by counsel.

Officer Tom called the telephone number of the address in question on May 19, 1955. A woman answered the telephone. The officer told her he was from out of town and had been given the address of her place by a friend. The woman told him that "Dee," which was the nickname of the telephone subscriber, was out, but to call back after 1 o'clock: The officer again telephoned at 2:30. The same woman answered the call. She told the officer that Dee did not know him by name (Jack Coleman), and that she and Dee were very angry with the man who had given him the unlisted telephone number. She said the man should have known better, as telephone deals were dangerous. Officer Tom gave the fictitious friend's name as Harry Shaperio. The woman stated that Dee had told her to tell him, i. e. the officer, to get Shaperio to come with him to her place or to telephone and verify that

---

[3]The findings include, *inter alia,* the following:

"'The City Council finds that the purpose for which the Police Permit No. 105 was issued is being abused to the detriment of the public and is being used for a purpose different from that for which it was issued.'"

he was OK. The woman said any time Saturday afternoon would be fine. She said "Shaperio knows better than to give strangers this number," and to tell Shaperio when he saw him that "they were disappointed in him." A massage or steam bath was not mentioned in either conversation. Later that afternoon the officer went to the address in question wearing Douglass badge Number 428 and sought admission. He was met at the door by a man dressed in a white outfit. This person said the masseuse had gone home and no one could take care of him. The officer remarked that some friends at Douglass had suggested that he come by. The man replied: "Bring some of them with you next time, and if we know them, you'r OK." Officer Tom saw no steam or other evidence of steam baths being given there. On the outside of the building was "a very small sign"—about 2 or 2½ inches high, containing three words—"Rock Steam Bath." The reception area was approximately four by five feet; a wooden partition completely blocked the view into the rest of the house. One could not see into the building, either in the front or in the rear.

If this place had been at the time legitimately operated as a steam bath and massage parlor there could have been no necessity for its prospective patrons to be vouched for by former customers. The evasiveness in connection with making an appointment, the oblique interrogation of prospective clients, and the clandestine operation of the enterprise are entirely out of harmony with the purpose for which the permit was issued. The evidence and the reasonable inferences therefrom amply support the finding of the city council, quoted in footnote 3, for "The purpose for which the place was being used or occupied need not be established by direct evidence, but may be gathered from all the surrounding circumstances shown by the evidence." (*People* v. *Renek,* 105 Cal.App.2d 277, 281 [233 P.2d 43] ; *People* v. *Battaglia,* 107 Cal.App.2d 476, 479 [237 P.2d 70] ; *People* v. *King,* 140 Cal. App.2d 1, 9 [294 P.2d 972].)

Judgment affirmed.

Moore, P. J., and Ashburn, J., concurred.