[Crim. No. 7796.   Second Dist., Div. Three.   Dec. 28, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS STILES AUSTIN, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In both of the first two counts of an information the appellant was accused of the crime of rape. (Pen. Code, § 261, subd. 3.) In the third count, the offense charged was a violation of section 288a of the Penal Code. He waived his right to trial by jury. The trial court found him to be guilty as charged in each count and he was sentenced to imprisonment in the state prison. His appeal is from the judgment.

With respect to the first charge, the appellant concedes that the evidence was sufficient to establish that the crime of rape was committed by someone, but he contends that the proof was insufficient to sustain the determination that he was the person who committed the crime. Keeping in mind that on this appeal the evidence is to be viewed in the light most favorable to the prosecution (*People* v. *Newland,* 15 Cal. 2d 678, 681 [104 P.2d 778] ; *People* v. *Carnavacci,* 119 Cal. App.2d 14, 16 [258 P.2d 1127] ; *People* v. *Renek,* 105 Cal.App. 2d 277, 281 [233 P.2d 43] ; *People* v. *Von Benson,* 38 Cal.App. 2d 431, 434 [101 P.2d 527]), a summary of the evidence which gave support to the determination of the trial court will be stated so that it can be evaluated. In addition, certain inconsistencies in the testimony will be noted.

The young woman involved in the first charge, hereinafter designated as W, testified that she first saw the appellant on February 17, 1960, at about 11:10 p. m. on 84th Street in Los Angeles. She was going home from school. The appellant alighted from his automobile and approached her. She further testified as follows: ''Q. What was the condition of lighting as to the location where you first saw this man? A. The light was behind me. Q. Was it light or dark at that time? A. It was dark.'' He grabbed her, placed a knife near her throat, and told her to get into his car. The act of intercourse was accomplished in the back seat. When W left the automobile and the appellant drove away, she tried to obtain the license number of the automobile; she thought that she saw the letters ''SMX.'' She described the vehicle as being a two-door Pontiac having ''green check'' upholstery on the rear seat. When shown a photograph of the rear seat of an automobile, she testified that the seat depicted looked like that in the rear of the vehicle in which the offense occurred.

In the course of the cross-examination, W testified that

there was no seat cover on the front seat of the vehicle. She thought that the dashboard was gray in color. The appellant wore shorts which were "white with small red figures on them." She was in the car with him for about two hours. About a week later she went to a lineup at the Police Department. As to what there occurred, she testified: "Q. And you identified a man other than this defendant as being the man that raped you, didn't you? A. Yes. I told them that it was a possibility that that was the man." When shown a photograph of the dashboard and front seat of an automobile, she said that the front seat did not appear to be the same as, or similar to, the one she had seen on the night as to which she had testified; she was positive that it was not the same.

In his testimony on his own behalf, the appellant said that on February 17, 1960, the license number of his automobile was SMZ431. He testified that the photograph of the rear seat of an automobile (being the photograph as to which W had testified as related hereinabove) appeared to be of the back seat of his car. He further testified that the photograph, which W had said was not a picture of the front seat of his automobile, showed the seat covers which had been on his car at all times during his ownership. He said that on February 17, he did own white shorts with figures on them which, he thought, were red in color.

The identity of the accused as the perpetrator of a crime is a question of fact to be resolved by the trial court. The fact that some inconsistencies existed in the evidence produced by the prosecution does not, in and of itself, require that a finding of such identity be set aside. The governing test is expressed as follows in People v. Hornes, 168 Cal.App.2d 314 [335 P.2d 756], at page 319: "Unless the evidence of identification can be strictured as inherently improbable or incredible as a matter of law, the finding of the trial court . . . cannot be disturbed and an appellate tribunal cannot substitute its judgment for that of the court below [citation]." (See also People v. Mack, 171 Cal.App.2d 631, 632 [341 P.2d 334].) In the present case, W had ample opportunity to observe her assailant. Her testimony was far from being inherently improbable. At the trial she exhibited no uncertainty with respect to the subject of the identity of the appellant as the perpetrator of the crime. The appellant's contention is without merit.

The woman involved in the incident which formed the basis of counts two and three will be designated as H. The

charge in count two was that of rape, in count three that of a violation of section 288a of the Penal Code. The appellant's contentions as to the charge of rape are that, "assuming every word of the prosecution's witness to be true, still there is no proof either of resistance by her, any force or violence used by the Defendant, or that the alleged act of sexual intercourse was accomplished." As to the other accusation, the appellant contends that H voluntarily participated in the act and, therefore, was an accomplice whose uncorroborated testimony was legally insufficient to sustain a conviction. The pertinent evidence which gave support to the determination of the trial court with respect to each count will be stated. In addition, reference will be made to certain evidence upon which the appellant places reliance in his argument in support of his contentions.

H testified that on May 23, 1960, she saw the appellant shortly after 3 a. m. while she was driving toward her home. She was "coming to a stop sign" at an intersection; the appellant drove up beside her and told her that he saw fire coming from underneath her vehicle. After driving some distance further, she stopped her car at the curb in a residential area. The appellant parked his vehicle behind her car, told her to move over in her front seat and then directed her to get into the rear seat. He pushed her over the front seat and followed her into the back. She testified as follows: "Q. Before you started to move from the front seat to the back seat were you afraid of him? A. Well, it is the way he grabbed me and pushed me over that frightened me in the first place." He told her to disrobe and she did. She was afraid of him at this time. He told her that this was the first time that he had ever tried to rape anyone. She let him do an act prohibited by section 288a of the Penal Code because she was afraid. He thereafter had intercourse with her; she testified that she felt his private parts inside her private parts. At that time she was afraid of him. She further testified: ". . . I was constantly telling him it was very uncomfortable with what he was trying to do to me in the back seat; and that is when I told him that if he just wanted to satisfy himself, well, if he didn't have the price of a motel I would pay for him to go to a motel. . . . Well, he agreed." She then put on her dress and the appellant returned to his automobile. She started her car. At one time, after the cars were moved, she was able to observe the license number of the appellant's vehicle; it was SMZ431. She then drove to her home and

into the driveway; her home was two blocks from where she had stopped. The appellant, who had been following her in his automobile, did not stop. She went into the house and called the police; it was then shortly after 4 a. m. About 6 a. m. the police took her to 46th Street and Central Avenue where she saw the appellant's car and, about ten minutes later, the appellant. She further testified: "Q. And as far as your participation, was anything that you did or that you let him do to you free and voluntary? A. No, sir. Q. Was everything that you did do or everything that you let him do the result of fear on your part? A. That's right."

On cross-examination, H testified that when the appellant said that he was going to rape her, she did not scream or attempt to jump out of the car or to fight him; she did not ask him not to rape her. She started to open the door with the intention of running but the appellant told her to crawl over into the back seat. He did not strike her at all. On one occasion she cried. On redirect examination she testified: "I cried because even though he said he was going to rape me, I didn't know what he was going to do to me after he even got through doing that." She further said on recross-examination: "Yes, I cried because he said he was going to rape me, but I'm a grown woman and I got sense enough to know if a person just rape you and let's you go, that is not near as bad if they don't kill you behind it. . . . No, just raping me wouldn't have frightened me. . . ."

While the appellant's version of the incident was essentially different from that of H and was of an exculpatory nature, it was for the trier of fact to determine the credibility of the witnesses. Contrary to the appellant's assertion, the testimony of H sustained the determination that the alleged act of sexual intercourse was accomplished. (See Pen. Code, § 263.) The appellant's argument that the evidence failed to show such an act is based on the statement of H, made in the course of cross-examination, that the appellant tried to have intercourse with her but that she "didn't feel like he was successful." In view of H's prior testimony which has been noted hereinabove, it was for the trier of fact to determine what the witness meant by her testimony and to resolve any apparent inconsistencies therein. (*People* v. *Koontz,* 171 Cal.App.2d 633, 634 [341 P.2d 815]; *People* v. *Haywood,* 131 Cal.App.2d 259, 261 [280 P.2d 180]; see *People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42].) With respect to the subject of her resistance, it was for the trier of fact to

weigh the significance under the circumstances of her failure to make an outcry. (See *People* v. *Harris,* 108 Cal.App.2d 84, 90 [238 P.2d 158].) All of her testimony was to be weighed for the purpose of determining the true nature of her actions. The testimony of H supported the inference that her conduct was due to her fear of great and immediate bodily harm if she should offer resistance. (See *People* v. *Peterman,* 103 Cal. App.2d 322, 325 [229 P.2d 444].) ▮ The evidence was sufficient to sustain the conviction of rape under the governing law as stated in *People* v. *Newlan,* 173 Cal.App.2d 579 [243 P.2d 618], at pages 581-582:

"It is a well-established rule that there must be some showing of resistance on the part of the prosecutrix (*People* v. *Bales,* 74 Cal.App.2d 732, 736 [169 P.2d 262]); however, the old rule calling for the victim to resist to her utmost has been considerably relaxed, that is: 'The extent to which she must resist his [the rapist's] advances is for the victim only to determine. She is required to go no further than is necessary to make manifest her unwillingness to yield to the attack. [Citations.] ▮ The crime is accomplished if at any moment during the struggle the accused intends to use such force as may be necessary to gratify his lustful concupiscence against the will of his victim. [Citation.] ▮ The importance of the woman's resistance to the rapist inheres in (1) his intent to use force and (2) her nonconsent; but the crime does not hinge upon the woman's "utmost exertion." ' (*People* v. *Stewart,* 109 Cal.App.2d 334, 343 [240 P.2d 704].)

▮ "The 'sufficiency of the woman's resistance, whether the resistance was genuine, sincere, and bona fide, as well as the extent of the resistance or nonconsent, are solely for the trier of fact.' (42 Cal.Jur.2d, Rape, § 14, pp. 205-206.)

▮ The authority just cited further states that the factors to be considered in determining the degree of resistance required are the relative strength of the parties, age and condition of the woman, the uselessness of resistance as it would appear to her, and similar factors. (Pp. 204-205.) It would therefore appear that the testimony of the prosecutrix that she did not in fact consent, that she tried to get away from the defendant but could not, and that she was crying, reasonably supports the inference that she did not consent and that such nonconsent was made manifest to the defendant, as was her actual resistance."

▮ With respect to the offense of violation of section 288a of the Penal Code, while some of H's testimony might

be said to warrant inferences favorable to the appellant, the evidence was amply sufficient to support the determination of the trier of fact that H's participation was involuntary and was due to her fear of immediate great bodily injury if she resisted. (See *People* v. *Green,* 153 Cal.App.2d 473, 477 [314 P.2d 828].) Accordingly, she was not an accomplice and no corroboration of her testimony was required. (*People* v. *Bias,* 170 Cal.App.2d 502, 506-507 [339 P.2d 204] ; *People* v. *Green, supra,* 153 Cal.App.2d 473, 477 ; *People* v. *Peterman, supra,* 103 Cal.App.2d 322, 325.)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.