[Crim. No. 477.   Fifth Dist.   July 23, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ANDREW
BENJAMIN ANDERSON, Defendant and Appellant.

Halley, Head & LaForce and Ronald L. LaForce for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and David L. Wasserman, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Andrew Benjamin Anderson, was convicted on count I of sodomy, otherwise known as "the infamous crime against nature" on the person of Patrick Hironymous, a 16-year-old male, and on count II of oral copulation with the same minor; the trial was heard by the judge without a jury. The defendant was sentenced to state's prison on each count, the sentences to run concurrently.

As his only point on appeal, the defendant argues that Patrick Hironymous was an accomplice and that there was insufficient corroborating evidence to warrant a conviction on either count.

The victim, Patrick Hironymous, first became acquainted with appellant when he answered an advertisement in the "Modesto Bee" for part-time irrigation work. The boy was 15 years old at the time and lived at home with his mother and stepfather in Modesto. In August 1966, Patrick received a telephone call from the appellant, who requested him to come to work at the Heath Ranch in Modesto. After completing work the first night, the appellant suggested that he and Patrick take a short nap. They crawled into the back of a station wagon at which time appellant attempted to commit an act of sodomy upon the boy. At this time, the appellant's advances were successfully resisted. Appellant told the boy that he (appellant) had been having a dream.

From August of 1966 through January of 1967, Patrick continued to live at home with his mother and stepfather. He worked on the Heath Ranch after school and on weekends at which time he would remain overnight. During this period, appellant committed numerous acts of sodomy and oral copulation on Patrick. Patrick testified that he assented to participate in the criminal acts because of appellant's threats to commit him to a mental institution and to beat him, and that he was in fact beaten at least three times by appellant during the period of August 1966 to January 1967. In addition, on several occasions, the appellant threatened Patrick with a hypodermic needle which he stated was filled with a deadly poisonous substance.

In February 1967, Patrick moved from the home of his mother and stepfather to live at the Heath Ranch. Several factors were testified to by the boy as causing this move. First of all, he testified that there was considerable friction at home, especially between him and his stepfather; secondly, it appears that there was some coercion on the part of the defendant, who told Patrick that he would be placed in a mental institution if he did not move out to the ranch. Patrick lived with the appellant until July 11, 1967; during this time he slept in the same bed with appellant, although there was a spare room which the defendant influenced him not to use. From February until July, the acts of sodomy and oral copulation testified to by the victim occurred approximately every

other night. Patrick testified that he could anticipate that the criminal acts would take place, that he expected them to take place, and that he knew they were wrongful. However, it was also Patrick's testimony that he did not consent but only assented to these acts because of appellant's threats of harm. These threats included commitment to a mental institution, physical beatings, innoculation with a substance which would cause death, threats with a shotgun, and general threats of death. During this time, appellant continually accused Patrick falsely of engaging in homosexual conduct with other boys.

On July 10, the appellant committed the specific act of sodomy, which is the basis of count I of the information; on July 8th or 9th, he performed the act of oral copulation, which is the basis of count two.

On July 11, 1967, after a heated argument with the appellant, Patrick prepared to leave the ranch. When appellant realized Patrick's intention, he became very angry and began to beat the boy. In the course of this beating, Patrick was slapped, hit with appellant's fists, choked, and struck on the head with a pistol. When he attempted to run away, appellant fired two shots with his pistol. After this, appellant exhibited a sudden change in his attitude, became remorseful and pleaded with Patrick to return. In fact, appellant placed the gun he had on a fence post. However, the boy simply took the gun and then continued to run away. The boy was offered help by some strangers at a nearby farm, but he was afraid to accept it, because he had been told by appellant that he was a deputy sheriff, and he, therefore, was afraid these strangers, when shown the badge, would turn him over to the defendant. Therefore, the boy kept running and eventually arrived at the home of Mrs. Faye Taylor, whose son Bill was a close friend of Patrick's at school. The Taylors were not at home at the time and the boy waited for them. When they arrived, they gave him clean clothes and a shower and called the police.

Mrs. Taylor testified at the trial that she had come home and found the boy bloody and dirty. She testified that she had told him to take the shower and then had called the police. Mrs. Taylor also testified that she had noticed a change in the boy's personality after he had gone to work at the Heath Ranch. She testified that he had developed a strained and frightened appearance. There was evidence in the record that Patrick was a boy of at least average intelligence.

Section 1111 of the Penal Code defines an accomplice. That section reads as follows:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

"An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

The essential question to be determined is whether or not Patrick Hironymous was an accomplice as defined by the law in connection with the two charges made against the defendant. If he was not an accomplice, the contention on appeal that there was no corroboration of his testimony is immaterial.

Section 26 of the Penal Code states that all persons are capable of committing crimes except those belonging to several classes specified, among which is the eighth subparagraph, which reads as follows:

"Eight—Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."

There is evidence which might well fall within this subparagraph—evidence of beatings, the firing of weapons in close proximity to the boy, the threats to inject poisonous material used in the treatment of bovine animals. All of these bits of evidence could be considered as making the victim believe that his life would be endangered if he refused the demands of the defendant.

The cases in this state have greatly broadened the situation under which a person participating in the forbidden acts under threats of great bodily harm should not be considered an accomplice. In *People* v. *Bias,* 170 Cal.App.2d 502, 506-507 [339 P.2d 204], in an opinion written by then Presiding Justice Bray, it is said:

"It is well settled that anyone who participates in an act of sex perversion because of threats and is in fear of great bodily harm is not an accomplice and such victim's testimony need

not be corroborated. (*People* v. *Willis* (1954) 129 Cal.App.2d 330 [276 P.2d 853].) Whether one is an accomplice is a question of fact. (*Idem.* p. 334; *People* v. *Walker* (1948) 88 Cal. App.2d 265, 268 [198 P.2d 534].) The jury could reasonably have inferred (and undoubtedly did) from Mary Ellen's testimony that she complied with defendant's demands because she reasonably feared her life would be endangered if she refused. He forced his way into her apartment at knife-point. While there he continued to wave the knife, which she thought had a blade 4-5 inches long. Defendant contends that Mary Ellen had a chance to flee while defendant was walking around the bed, and her failure to do so implies a willing consent. That she could have fled is a conclusion which the jury apparently refused to draw and that refusal is reasonable. The fact that she did not attempt to flee is not inconsistent with a reasonable fear that her life was in danger.''

In *People* v. *Austin,* 198 Cal.App.2d 669 [18 Cal.Rptr. 209], the defendant was convicted of rape and of violation of section 288a of the Penal Code. In connection with the conviction on the latter charge the court said in the opinion, at pages 675-676:

''With respect to the offense of violation of section 288a of the Penal Code, while some of H's testimony might be said to warrant inferences favorable to the appellant, the evidence was amply sufficient to support the determination of the trier of fact that H's participation was involuntary and was due to her fear of immediate great bodily injury if she resisted. (See *People* v. *Green,* 153 Cal.App.2d 473, 477 [314 P.2d 828].) Accordingly, she was not an accomplice and no corroboration of her testimony was required. [Citing cases.]''

In *People* v. *Olds,* 154 Cal.App.2d 78, 81-82 [315 P.2d 881], the applicable rule is thus discussed:

'' 'To be an accomplice one must knowingly, voluntarily, and with common intent unite with the principal offender in the commission of the crime.' (*People* v. *Lamb,* 134 Cal.App. 2d 582, 585 [285 P.2d 941]; *People* v. *Shaw,* 17 Cal.2d 778, 799 [112 P.2d 241].) This requires consent, which is defined in *People* v. *Dong Pok Yip,* 164 Cal. 143, at page 147 [127 P. 1031] as follows: 'Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. ''Consent'' differs very materially from ''assent.'' The former implies positive action and always

involves submission. The latter means mere passivity or submission, which does not include consent.' In *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], which concerned a violation of the same section of the Penal Code here involved, the court pointed out (p. 475) that 'The jury apparently accorded full credit to the boys' testimony that they did not "willingly" join in the criminal acts, and so concluded that their part therein constituted an "assent" rather than a "consent." Consequently, the boys, by virtue of the evidence accepted by the jury as true, were not accomplices and corroboration of their testimony was not necessary.' In *People* v. *Featherstone,* 67 Cal.App.2d 793 [155 P.2d 685], which also involved a violation of this same code section, the court observed (p. 796) that 'If he (a fifteen-year-old boy) was not an accomplice, corroboration of his testimony was not necessary.'

"It was for the arbiter of the facts to determine whether Ronald consented to and wilfully joined in the criminal act defendant committed. Of course on appeal we must accept as established every fact in harmony with the judgment that finds adequate support in the evidence."

*People* v. *Washington,* 203 Cal.App.2d 609, 610 [21 Cal. Rptr. 788], similarly discusses the principles involved as follows:

"One of the victims testified that after robbing her, defendant forced her at the point of a knife and while she was in great fear of bodily harm therefrom to engage in an act in violation of section 288a, Penal Code, and then, while still in such fear, forced her to have sexual intercourse with him. Consent induced by fear is no consent at all. (*People* v. *Hinton,* 166 Cal.App.2d 743, 749 [333 P.2d 822].) Also, one who 'participates in an act of sex perversion because of threats and is in fear of great bodily harm is not an accomplice and such victim's testimony need not be corroborated.' [Citation.] Whether one is an accomplice is a question of fact."

Furthermore, a principle has been developed, not by statute but by case law, which makes the factors involved lead to a conclusion that the boy was dominated by the older person, and that he assented rather than consented to the various improper acts involved in the charge against the defendant. *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], suggests that a boy is not an accomplice if he is simply afraid of the older person and dominated by him. The fear referred to in the opinion is not closely defined, but it apparently does not mean

necessarily fear of death or even of great bodily harm. In that case, the defendant was prosecuted for violation of Penal Code sections 288 and 286; all of the boys involved were under the age of 14 years, and it was held that they could not be accomplices under section 288 of the Penal Code, but that they could be under section 286 if they participated knowingly in the forbidden acts; there was evidence in the case that the boys knew that the acts were wrongful, and the court, therefore, treated them as potential accomplices in spite of their ages. The Supreme Court held, however, that where the boys participated in the acts because they were afraid of the defendant and were dominated by him, they merely assented instead of consenting to them and, therefore, they could not be considered accomplices. In the present case, there was ample evidence aside from the actual fear of death or great bodily harm that Patrick Hironymous was much dominated by defendant and generally afraid to disregard his demands. Important evidence in this regard consists of the threats made by the defendant if the boy did not submit and did not continue to go to the ranch he would be placed in a mental institution. Unquestionably, the boy was afraid to run away from the defendant until his final departure from the ranch, because the defendant had told him that he was a deputy sheriff and had ''private eyes'' watching, who would report to the defendant any such move by the victim.

The Hironymous boy denied repeatedly that he consented to the acts done by the defendant.

The appellant contends that it was not permissible for the court to find that the boy was not an accomplice, arguing that he was over 14 years of age, that he knew that what the appellant was doing to him was wrong, that he acted voluntarily and that he slept in the same bed as the appellant, although there was a spare room which he could have used, and that he had ample opportunity during the times that he was going to school to complain to his mother and stepfather or to the authorities concerning the treatment that he was receiving. However, the trial court had the duty under the law to resolve this conflicting evidence and to determine from it whether or not the Hironymous boy was in fact an accomplice. If he was an accomplice, the judgment cannot stand, because there is not sufficient corroboration of the testimony of young Hironymous. If, on the other hand, he was not an accomplice, the testimony is amply sufficient. The court actually determined that Hironymous was not an accomplice, and

it had ample evidence before it to justify the finding. The minutes of the trial for October 5, 1967, show the following:

"The Court finds that the Defendant is Guilty of Count I, Violation of Section 286 of the California Penal Code and Guilty of Count II, Violation of Section 288(a) of the California Penal Code, felonies. *The Court further finds beyond a reasonable doubt, that the minor was not an accomplice.*" (Italics added.)

The judgment finding the defendant guilty on counts I and II is affirmed.

Stone, J., and Gargano, J., concurred.