[Crim. No. 3588. Fourth Dist., Div. One. Apr. 16, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID RAY BROWN, Defendant and Appellant.

## COUNSEL

David K. Kroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—A jury found David Ray Brown guilty of sodomy (Pen. Code, § 286), kidnaping (Pen. Code, § 207) and assault with a deadly weapon (Pen. Code, § 245). The trial court reduced the assault with a deadly weapon charge to the included misdemeanor offense of exhibiting a deadly weapon in a threatening manner (Pen. Code, § 417). The court sentenced Brown to state prison on the sodomy and kidnaping counts and the county jail for six months on the misdemeanor. The court stayed execution of sentence on the sodomy and exhibiting a deadly weapon convictions pending any appeal, the stay to become permanent upon completed service of the sentence for kidnaping.

On May 15, 1968, 14-year-old Steven S. saw Brown at the San Diego County Hospital. Steven said he had known Brown before in Perris, California. Steven introduced Brown to his aunt. Brown offered to drive both Steven and Steven's aunt home in his car after he completed his business at the hospital. Steven's aunt could not wait. She took a bus home, leaving Steven at the hospital to ride home with Brown.

Brown drove Steven first to a furniture repair shop, then to Brown's home and finally to Steven's aunt's house where Steven lived. Nothing unusual happened during this trip.

The following day, May 16, 1968, Brown arrived at Steven's house between 9:30 and 10 in the morning. Steven was home, having told his aunt he did not feel well and wanted to stay home from school. Brown told Steven's aunt about a Youth Organization he recommended Steven join. Steven's aunt told Steven to go to school. Brown volunteered to drive Steven there. Steven demurred but went with Brown when his aunt insisted he attend school.

Instead of taking Steven to school, Brown took him to his home against Steven's wishes. At this point Steven said he wanted to go to school. Steven

said Brown threatened him with an ice pick like weapon while in the car. Steven and Brown entered Brown's house. Brown locked the door. Steven sat down as Brown went into the kitchen. Steven tried to leave but Brown reappeared with the ice pick like weapon and ordered Steven into the bedroom. In the bedroom, Brown ordered Steven to disrobe, then committed an act of anal intercourse on Steven.

After Steven dressed, Brown gave him a dollar then dropped him off at school. Brown told Steven not to say anything or he "would hit an early grave."

After attending school classes, Steven went home, had a bite to eat, wandered about the house, then went downtown to go to a show. Steven did not return home until 5 a.m. To explain his absence Steven told his aunt he had found a job in a restaurant.

On Saturday, May 18, the second day after the incident, Steven ran away from home. On May 21, the police questioned Steven about running away. Steven told the police about what had happened with Brown.

On appeal, Brown contends Steven's testimony was so unbelievable it did not support Brown's convictions. Brown's attorney succeeded in impeaching Steven's testimony in a number of instances. Steven told a policeman Brown threatened him in the car by simulating a weapon in his pocket. At the trial, Steven mentioned the sharp instrument, then, on cross-examination, said Brown had both a simulated gun and a pick-like tool in the car. There is some question whether Steven could have known Brown in Perris as Brown was in prison during the time Steven said he knew Brown there. Steven's aunt testified, however, Steven was a very poor judge of time, saying "three months is a whole year to him." Steven was also uncertain as to when he visited Brown's apartment (other than the day of the crime). Other minor discrepancies in Steven's testimony are alluded to by Brown in support of his contention we must not believe Steven.

 Before we may reject the testimony of a witness believed by the jury, his testimony must be inherently improbable. There must exist either a physical impossibility his statements are true or their falsity must be apparent without resorting to inferences or deductions (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Jones,* 268 Cal.App.2d 161, 165 [73 Cal.Rptr. 727]). The inconsistencies and discrepancies in Steven's testimony were matters to be considered by the jury when it assessed his credibility. They did not make Steven's testimony inherently improbable.

Brown meritoriously contends the jury should have been instructed on the law regarding accomplices and the necessity an accomplice's testimony be corroborated. Whenever evidence at a trial raises a reasonable

inference a witness implicating a defendant is an accomplice, it is the duty of the court to instruct the jury regarding accomplices and accomplice testimony. Failure to do so is error whether or not the implicated defendant requests the instructions (*People* v. *Warren,* 16 Cal.2d 103, 118-119 [104 P.2d 1024]). ■ The question of whether a witness is an accomplice should be submitted to the jury for decision as a matter of fact where the evidence raises conflicting inferences (*People* v. *Featherstone,* 67 Cal.App.2d 793, 796 [155 P.2d 685]).

The Attorney General argues no error occurred by failure to give accomplice instructions since Steven testified Brown forced him by threat of violence and Brown denied the criminal act in its entirety.

■ Consent is not a defense to a sodomy prosecution. What the Attorney General proposes is the defendant must corroborate the accomplice (in order to establish he is an accomplice) in order to require the accomplice's testimony be corroborated. We find no such requirement in the cases. Whenever a question of fact arises as to whether a witness is an accomplice and that question must be resolved from conflicting inferences arising from the evidence, then the jury must resolve the question on proper instruction by the court. (See *People* v. *Ellis,* 137 Cal.App.2d 408 [290 P.2d 266].)

■ Steven testified he was forced to participate in the act. ■ Participation induced by threats and fear of bodily harm removes one from an accomplice category. (*People* v. *Anderson,* 264 Cal.App.2d 271, 274-276 [70 Cal.Rptr. 231].) ■ However, Steven's testimony also raised inferences he may have participated voluntarily. The morning after Steven met Brown at the hospital, visited his house and was driven home, Steven stayed home from school claiming illness. Brown showed up at Steven's house at 9:30 or 10 in the morning. The jury could infer this coincidence was arranged by Steven and Brown the day before. While Steven described a threat by a weapon he equivocated as to the nature of the weapon. Steven's failure to escape when Brown was in the kitchen, accepting a dollar from Brown after the act, attending school the rest of that day and failing to report the incident until questioned by the police as a runaway, all raise inferences Steven may have been an accomplice. The matter should have been submitted to the jury. (See *People* v. *Bias,* 170 Cal.App.2d 502, 506-507 [339 P.2d 204].)

■ Under the particular facts of this case, however, the failure to instruct on accomplices was not prejudicial. This is so because the jury found Brown employed force on Steven when it found him guilty of kidnaping and assault with a deadly weapon. It is inconceivable the jury would find Steven would voluntarily participate in the act of anal intercourse after having been taken to Brown's house against his will and having been threatened

with a deadly weapon. Had the jury been correctly instructed regarding accomplices, any finding Steven was an accomplice would be inconsistent with its findings Brown kidnaped and assaulted Steven as part of the same transaction in which Brown committed the act of sodomy.

■ Brown charges the prosecutor with prejudicial misconduct in asking Brown on cross-examination if he felt "any physical or sexual attraction towards male persons." Before trial started the prosecutor had agreed he would not introduce evidence of Brown's homosexual and transvestite tendencies. Under this agreement, the question should not have been asked. We find little likelihood the jury would have been influenced, however, where Steven had testified to an explicit homosexual act, Brown had denied a sexual attraction to Steven, the question was not answered as the court sustained an objection to it and the jury was correctly instructed concerning questions to which objections are sustained. (See *People* v. *Watson,* 46 Cal.2d 818, 837-838 [299 P.2d 243].)

■ Brown contends the trial court committed prejudicial error by sustaining objections to questions aimed toward corroborating Brown's testimony his dealings with Steven were to interest him in a youth achievement program. The defense called Brown's parole officer. Defense counsel asked: "During the period he [Brown] was on parole has he been involved with an organization called the Youth Opportunities Program?" The court correctly sustained an objection the question called for hearsay, there being no evidence the parole officer had independent knowledge of the matter. (See Witkin, Cal. Evidence (2d ed. 1966) § 772, p. 718.) Defense counsel then asked if the parole officer had attended any of the youth organization's meetings. Objection was correctly sustained as it was immaterial whether the parole officer attended any meetings. Had the testimony been offered as foundational to overcome the hearsay objection, the question would have been material to that issue. It was not, however, offered for that purpose.

■ Moreover, even had the court erred in sustaining objections to questions about the youth program, no prejudice appears. Steven and Steven's aunt both corroborated Brown's testimony about the program. ■ While, in argument, the prosecutor referred to the program as a "ruse" employed by Brown to be near Steven, this was a legitimate argument on the evidence whether the youth program existed in fact and whether Brown was connected with it.

Judgment affirmed.

Coughlin, J., and Ault, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 10, 1970.