[Crim. No. 17950. First Dist., Div. Four. July 23, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES RONALD NEELY, JR., Defendant and Appellant.

1012

1014

COUNSEL

Paul A. Roller, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and John H. Sugiyama, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RATTIGAN, Acting P. J.**—A jury found appellant James Ronald Neely, Jr., guilty of the murder (Pen. Code, § 187) and robbery (*id.,* § 211) of Napoleon Bowen. He appeals from the judgment of conviction.

Appellant and Stephen Jones were jointly charged with the two crimes in a single information, but appellant was tried separately. Shortly before the commencement of his trial, he moved for an order excluding from evidence certain inculpatory tape-recorded statements he had made to police officers while in custody shortly after the crimes were committed. This so-called "motion to suppress" was made on the ground that the statements were inadmissible in evidence because the officers had taken them in violation of appellant's *Miranda* rights.[1] (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The trial court denied the motion after an evidentiary hearing, and the recorded statements were played to the jury at the trial which followed.

The jury found appellant guilty of murder and robbery as charged, and fixed the degree of both crimes at first degree. He moved for a new trial on the principal ground that juror Shelton Balthazar had committed prejudicial misconduct. After an evidentiary hearing on the motion, the trial court denied it and sentenced appellant to state prison for the terms prescribed by law.

On his appeal from the judgment of conviction, appellant claims reversible error in the trial court's denial of the two motions mentioned. For the reasons next discussed under separate captions, both claims are to be rejected.

### The Tape-Recorded Statements

The following recitals are supported by the records made at trial and on the motion addressed to the tape-recorded statements:

While investigating a citizen informant's complaint at an early morning hour on April 4, 1977, a police officer saw two men running away from an automobile on an Oakland street. He later stopped and questioned appellant and Stephen Jones, both of whom denied any connection with the automobile. Upon learning by radio that the vehicle was owned by Napoleon Bowen, the officer arrested appellant and Jones on suspicion of automobile theft.

Later on the morning of April 4, Bowen's decomposing body was found under a mattress in his apartment on West MacArthur Boulevard

---

[1] The parties refer to appellant's challenge of the statements as a "motion to suppress." Properly speaking, it was a request which mandated a hearing on "the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury . . . ." (Evid. Code, § 402, subd. (b).)

in Oakland. He had been tied and gagged, and had died of asphyxiation. On the afternoon of April 4, when appellant was still in custody, two Oakland police officers approached him and advised him of his *Miranda* rights. He stated that he understood his rights, and expressed a willingness to talk to the officers. They then interrogated him for approximately 45 minutes. This interview was not tape recorded.

The officers next conducted another interrogation which was tape recorded with appellant's knowledge. One of the officers reminded appellant that he had been informed of his *Miranda* rights, and repeated them. Appellant confirmed that he understood his rights, and again expressed his willingness to talk to the officers. He also acknowledged that he was "aware we're talking about a couple of incidents," one when he had been "stopped" that morning and the other "something that happened in an apartment on West MacArthur, up on MacArthur Boulevard." The officers then knew, but did not tell appellant, that Bowen had been found dead in his MacArthur Boulevard apartment. In response to questions asked him in the recorded interview, appellant stated as follows:

On the night of April 1-2, 1977, he had encountered Bowen and Jones outside an Oakland bar. Jones displayed a knife and demanded Bowen's wallet and car keys, which were surrendered. Jones then drove the three to Bowen's apartment in his (Bowen's) automobile. Jones tied and gagged Bowen in the apartment, appellant cut the bedroom telephone wire, he and Jones took Bowen's stereo set and put it in his automobile, and the two drove away in the vehicle. They returned an hour later and removed other items from the apartment, where Bowen was still tied and gagged. Appellant cut the kitchen telephone wires, he and Jones covered Bowen with a mattress, and they left again in Bowen's automobile.

After this interrogation had concluded, appellant told the officers that "if he could talk to the guy and give him his stuff back, he was sure the guy wouldn't press charges against him." One of the officers then told him that Bowen was dead. Appellant "acted surprised."

Shortly thereafter, a deputy district attorney questioned appellant again. This interview was also preceded by a *Miranda* admonition. Appellant again stated that he understood his *Miranda* rights, and expressed a willingness to talk and to be tape recorded. In the second recorded interrogation, which followed, he gave substantially the same account of the night of April 1-2.

■ Appellant now contends that the tape-recorded statements should have been excluded on his motion to suppress, and that they were erroneously admitted in evidence against him in violation of *Miranda,* on the ground that he could not have made a "knowing and intelligent waiver" of his *Miranda* rights when he had not been informed that Bowen was dead and, hence, of the charge pending against him or its gravity. Although he had been told of Bowen's death before he made the second tape-recorded statement, he argues that the nondisclosure of this fact before the first one irrevocably tainted both statements for *Miranda* purposes.

We do not find the taint charged to either statement. The *Miranda* decision is explicit as to what a person under custodial interrogation must be told, beforehand, if his responses are to be admissible in evidence against him on the theory that he waived his rights by submitting to questions. ■ "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation *of these rights,* provided the waiver is made voluntarily, knowingly and intelligently." (*Miranda* v. *Arizona, supra,* 384 U.S. 436 at p. 444 [16 L.Ed.2d 694 at pp. 706-707] [italics added]. See also *id.,* pp. 467-477, 479 [16 L.Ed.2d pp. 719-725, 726].)

■ Appellant was advised of "these rights" on not less than three occasions and before each interrogation session. The record clearly indicates that he "waived effectuation" of the rights by submitting to questions on each occasion. The *Miranda* decision neither holds nor suggests that he had the additional right to be informed of the actual charge impending against him at the time, nor that the officers' failure to give him this information invalidated his waiver. He has cited no California decision supporting his contention to these effects, and the weight of authority in other jurisdictions is to the contrary. (See *Collins* v. *Brierly* (3d Cir. 1974) 492 F.2d 735, 738-739; *State* v. *Carter* (1979) 296 N.C. 344 [250 S.E.2d 263, 267-268] and cases there cited.) The claim of *Miranda* error must be rejected for both reasons.

### Juror Misconduct

Appellant claims reversible error in the denial of his motion for a new trial as made on the grounds that juror Balthazar had committed prejudicial misconduct (1) by concealing from the trial court and counsel

his "bias" against appellant, (2) by concealing the fact that he (Balthazar) was hard of hearing to an extent which made him incapable of performing the duties of a juror (see Pen. Code, § 1072, subd. 3.), and (3) by bringing to the jury room documents not in evidence and resorting to them himself. We consider these grounds by the numbers.

### (1)

██ The claim that Balthazar concealed his alleged "bias" rests upon the premise that he had such "bias" in fact. The fact is in turn asserted on the basis of testimony given by juror Mary Trawick, on the motion for a new trial, that Balthazar had remarked to her at the outset of the jury's deliberations that appellant was "guilty" and a "cold-blooded murderer." Juror Trawick's testimony to these remarks was admissible as evidence of "statements made . . . within the jury room . . ." (Evid. Code, § 1150, subd. (a)) which represented "overt acts, objectively ascertainable," on Balthazar's part. (*People* v. *Hutchinson* (1969) 71 Cal.2d 342, 349 [78 Cal.Rptr. 196, 455 P.2d 132].) There was no evidence that he had made similar statements before the jury had commenced its deliberations. The question is therefore whether the quoted remarks showed the "bias" of which appellant complains.

The remarks indicated Balthazar's failure to heed one of the messages of CALJIC No. 17.41, which the trial court gave in full. The message is suggestive in its terms, but not mandatory.[2] (See *People* v. *Selby* (1926) 198 Cal. 426, 439 [245 P. 426].) The remarks do not support the inference that Balthazar was *biased* against appellant when or before he made them. There was no evidence that he had concealed any *bias* from the court or counsel when he was examined as a prospective juror. The trial court explicitly found that there had been no such concealment in fact. The finding is supported by the evidence, appellant has not shown that the trial court abused its discretion in making it, and it is to be sustained for both reasons. (*People* v. *Perez* (1973) 9 Cal.3d 651, 660 [108 Cal.Rptr. 474, 510 P.2d 1026].)

### (2)

██ At the hearing on the motion, juror Trawick also testified to incidents which had apparently caused her to believe that Balthazar had

---

[2] The message appears in CALJIC No. 17.41 as follows: "It is rarely productive of good for a juror at the outset to make an emphatic expression of his opinion on the case or to state how he intends to vote."

not been able to hear some of the oral evidence received at the trial. Balthazar testified that he "sometimes" had "a hard time hearing" and that he had experienced "difficulty hearing all of the evidence."

The trial court disposed of this issue by stating: "So far as any problem regarding Mr. Balthazar's ability to hear [*sic*], the court did have a question about that . . . but I have noticed that during this hearing [on the motion for a new trial], this morning, he was able to hear, virtually, every question that's been presented. And so, the court is prepared, at this time, to make a finding that any hearing impairment that may exist was not of such a quality that would disqualify him as a juror or would justify a motion [*sic*] for a new trial."

As its context indicates, the trial court properly made this finding from its own observations. It went unchallenged when it was made, and it is supported by the full transcript of Balthazar's testimony on the motion. It necessarily imports the further finding that he had not concealed any material impediment in his hearing from the court or counsel. Both findings are supported by the evidence, and both are to be sustained. (*People* v. *Perez, supra,* 9 Cal.3d 651 at p. 660.)

(3)

■ It was shown on the motion for a new trial that Balthazar had brought to the jury room, and exhibited there, five separate documents which had not been received in evidence or committed to the jury in the trial court's ·instructions. He had acquired the documents when he had formerly served as a member of a federal *grand* jury. They were received in evidence, and numbered as exhibits ("Court Exhibits") 1 through 5, at the hearing on the motion.

Exhibit 1 ("Instructions To The Grand Jury") is a reporter's transcript of orientation instructions and suggestions which the federal court had given to Balthazar and the other members of the grand jury relative to their general performance as such. The other documents recite more specific instructions on the subjects identified in the respective captions " 'Malice Aforethought'—Defined" (exhibit 2); "Essential Elements of [the] Offense" of first degree murder (exhibit 3); "Verdict—Second Degree Murder—When Appropriate" (exhibit 4); and "Verdict—Manslaughter—When Appropriate" (exhibit 5).

Juror Trawick testified that Balthazar had first showed these documents to another juror; that she had observed that the other juror "did not read them"; that Balthazar then showed them to her (Trawick) and "told me they were definitions of part of the law and he thought I needed to read them"; but that she had refused to read them and told Balthazar that "we can't use these papers" because "[w]e're to go just by the judge's instructions." She further testified that no other juror had read the documents, and that no one had read them aloud. Balthazar testified in effect that no other juror had read them, but that he had read them before (and apparently during) the jury's deliberations.

All of this testimony was admissible, in connection with appellant's attempt to impeach the verdict on his motion for a new trial, because it described "statements made, or conduct, . . . or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly." (Evid. Code, § 1150, subd. (a); *People v. Hutchinson, supra,* 71 Cal.2d 342 at p. 350.)[3] We conclude from it, as the trial court did, that Balthazar had committed juror misconduct by bringing the documents to the jury room and by reading them himself before the verdict had been reached. (*People v. Martinez* (1978) 82 Cal.App.3d 1, 22 [147 Cal.Rptr. 208]; *People v. Murphy* (1973) 35 Cal.App.3d 905, 931 [111 Cal.Rptr. 295].)

■ A showing of such misconduct raises a "presumption of prejudice" which will command a new trial for the defendant unless it is rebutted by evidence that no prejudice actually resulted. (*People v. Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91].) ■ The trial court effectively concluded that the presumption had been rebutted here, and found that appellant had not been prejudiced. The question is whether that finding was correct.

The testimony summarized above establishes that the extraneous documents could not conceivably have influenced any juror except

---

[3]Balthazar further testified that he had "relied" on the documents in "arriving" at his verdict, but that he had followed the trial court's instructions; that he had based his verdict on the evidence; and that his verdict had not been "affected or influenced, at all," by the documents. This testimony was *not* admissible because it described his subjective "mental processes" as a juror. (Evid. Code, § 1150, subd. (a); *People v. Hutchinson, supra,* at pp. 349-350.) It was nevertheless received without objection and the trial court, stating its reasons for denying the motion for a new trial, emphasized Balthazar's testimony that he had based his verdict on the evidence and the court's instructions. Any problem with the competence or admissibility of this testimony is dispelled by the court's further reasoning, and its conclusion that the events involving the documents had not prejudiced appellant, as recited later in the text.

Balthazar, because only he read them; and that they accordingly could not have affected the verdict except to the extent, if any, that they influenced his vote alone. Whether they had this effect depends upon their contents and any valid evidence of his reaction to them. (See fn. 3, *ante.*) Exhibit 1 may be disregarded because it recites little or no substantive law and is wholly general in nature. Exhibits 2 through 5 are more specific on the substantive legal points they reach, but we find in them no material deviation from any of the trial court's instructions which might have covered or touched upon the same points.[4] Balthazar testified, and his testimony supports the inference, that he understood the differences between the roles and responsibilities of grand jurors on the one hand and trial jurors on the other.

We conclude, as the trial court did, that Balthazar's resort to the documents could not have influenced his verdict in any improper manner or at all. There was accordingly substantial evidence which rebutted the presumption of prejudice raised by his misconduct in producing and reading the documents. The presumption having been rebutted, the trial court's finding that appellant had not been prejudiced is to be sustained. (*People* v. *Pierce, supra,* 24 Cal.3d 199 at p. 207; *People* v. *Perez, supra,* 9 Cal.3d 651 at p. 660.)

The judgment of conviction is affirmed.

Christian, J., and Poché, J., concurred.

---

[4] The pertinent exhibits and instructions cannot be reproduced here because of their length, but we may provide some details of our comparative review. As their titles indicate in part, exhibits 2 through 5 generally pertain to homicide. They describe malice aforethought and premeditation, in themselves and in combination as elements of first degree murder; the elements of voluntary and involuntary manslaughter; and the propriety of a verdict of guilt of murder in the second degree if the first degree has not been proved beyond a reasonable doubt. We have compared these exhibits with all the instructions given by the trial court. Those of the instructions which pertained to homicide, which conceivably touched upon anything mentioned in exhibits 2 through 5, and which principally support our comparative conclusion were given in language appearing in CALJIC Nos. 8.00, 8.10, 8.11, 8.21, 8.27, 8.30, 8.31, 8.32, 8.34, 8.37, 8.40, 8.41, 8.45, 8.46, 8.48, 8.50, 8.51, 8.70, 8.71, 8.72, 8.74, and 8.79. We emphasize that this list is illustrative, but not exclusive, and that we have compared exhibits 2 through 5 with *all* the instructions given by the trial court on both counts charged.