[Crim. No. 27644. Second Dist., Div. Five. Dec. 27, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS DEAN SULLIVAN, Defendant and Appellant.

**COUNSEL**

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and J. Richard Haden, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KAUS, P. J.**—Defendant Thomas Dean Sullivan was charged with ten counts of grand theft involving five transactions. A jury convicted

defendant of five counts and acquitted him on four counts; one count was dismissed by the trial court. Defendant was sentenced to prison; by corrected judgment, he was sentenced to concurrent terms on two counts with a third count to run consecutive to the concurrent counts.[1] He was given credit for 131 days jail time.

## FACTS

Defendant was convicted of theft of the Files' Ford truck and camper (counts 1 and 2), of the Reyes' camper (count 4), and of the Hamilton boat and trailer (counts 9 and 10). The prosecution's case was based on the testimony of Cain, a participant in the thefts; Montegna, who arranged with defendant to purchase the items for his friends and family; and the two purchasers of the Reyes' camper and Hamilton boat and trailer. All four witnesses testified under grants of immunity.[2]

(a) Counts 1 and 2: Theft of Files' Ford truck and camper (April 1974). Montegna contacted defendant and told him that he "would like to get another camper." (See count 4 for first camper.) Cain and defendant stole the Files' Ford truck and camper. By this time, Cain was "working off a beef" with the police by participating in the theft. An officer testified, in substance, that defendant and Cain were under surveillance when the Files' Ford truck and camper were stolen; Cain was wired for sound. The thieves were followed by a police car. Another officer observed Cain and defendant from a helicopter.

(b) Count 4: Theft of Cruz Reyes' camper (February 1974). This was the first transaction between defendant and Montegna. They met in a cafe and Montegna said he "would like to get a camper for my neighbor" and could defendant "do it, . . . ." Defendant could. The neighbor was Raul Reyes, no relation to the owner of the camper.

Defendant told Cain that he, defendant, could sell a camper if Cain could get one. This occurred before Cain began cooperating with the police. Cain and defendant drove around and they spotted the camper. Cain stole it.

[1] It appears that the trial court had no jurisdiction to "correct" the judgment about four months after entry by striking the sentence on two counts. In view of our disposition, the point is moot.

[2] We limit the statement of facts and discussion to the evidence concerning the counts on which defendant was convicted. Cain in fact participated in all five transactions and Montegna, in three.

According to Montegna, three or four days later defendant delivered the camper and Montegna paid him $600 and kept $150 as his "profit." Raul Reyes, the buyer, had no dealings with defendant. He testified that he thought the camper was worth $1,000, but he did not think the $750 that he was paying Montegna was too low.

(c) Counts 9 and 10: Hamilton boat and trailer (March 1974). Montegna was not involved in this transaction. Bobbie Lee Tucker spoke to defendant by telephone. Defendant "said he had heard I was in the market for a boat, and went along like that, and I ordered a boat." About that time, Cain phoned up defendant and said he needed money. Defendant said he "needed a boat." Cain and defendant went out to look at a boat. The next day, he and defendant stole the Hamilton boat and trailer. This too occurred before Cain began cooperating with the police.

Defendant phoned Tucker to say that the boat and trailer would be delivered Saturday; he and Cain delivered them. The price was $2,000. Tucker knew when he ordered the boat that it was to be stolen.

Facts will be added in the discussion.

## DISCUSSION

Defendant's contentions on appeal relate chiefly to issues of accomplice testimony.

### Jury Instructions Given

We can quickly dispose of certain of defendant's contentions concerning the jury instructions.

1. He claims that the trial court erred in instructing the jury that merely "assenting to or aiding or assisting in the commission of a crime without guilty knowledge or intent is not criminal, . . . ." (CALJIC No. 3.14.) ■ He asserts that the instruction was confusing because all of the witnesses knew they were dealing in stolen goods. The factual assertion is not quite true. Neither Montegna nor Raul Reyes, who bought the count 4 camper, admitted to knowing that the goods were stolen. The jury was entitled to determine as a matter of fact whether they were "without guilty knowledge. . . ."

2. Defendant contends that the instruction on "Sufficiency of Evidence to Corroborate an Accomplice" (CALJIC No. 3.12) was misleading because the instruction refers to "accomplice," singular, and several persons who gave evidence could have been accomplices. ■ The contention is without merit. CALJIC No. 3.13 makes clear that multiple accomplices are envisioned: "The corroboration of the testimony of an accomplice . . . may not be supplied by the testimony of any or all of his accomplices, . . . ."

Defendant also contends that CALJIC No. 3.13 is inadequate because it states only that the corroboration "must come from other evidence," without making clear the source of that evidence. ■ However, the jury was also fully instructed in the definition of corroborative evidence (CALJIC No. 3.12).

*Corroboration of Accomplice Testimony*

Defendant contends that the evidence is not sufficient to sustain the verdicts because the accomplice testimony was not adequately corroborated.

*Counts 1 and 2*

■ With respect to counts 1 and 2, the contention is without merit. When defendant and Cain stole the Files' truck and camper, Cain was cooperating with the police and no longer an accomplice. Besides, any evidence supplied by him or by Montegna was corroborated by that of the police officers who were observing and following Cain and defendant by automobile and by helicopter.

Although, as we discuss below, the jury was not fully instructed on accomplice testimony, the evidence against defendant on these counts was overwhelming and therefore the error does not require a reversal. (*People* v. *Cisneros* (1973) 34 Cal.App.3d 399, 416 [110 Cal.Rptr. 269].)

*Count 4*

■ Defendant's contention that the accomplice testimony was inadequately corroborated may be meritorious with respect to Count 4, theft of the Reyes' camper (witnesses: Raul Reyes, Montegna and Cain). The problem is that the jury was deprived of an opportunity to decide the corroboration issue as a factual matter.

Cain was, as to all counts except 1 and 2, an accomplice as a matter of law and the jury was so instructed. However, the only other instruction defining an accomplice was CALJIC No. 3.10: "An accomplice is one who is liable to be prosecuted for the identical offense charged against the defendant on trial."

The problem with this instruction is that it required the jury to find that the potential accomplices could have been charged with grand theft. Except for possibly Montegna, there was no evidence to tie persons such as Reyes or Tucker into defendant's theft of the items, although Reyes and Montegna were probably receivers of stolen property and Tucker was a receiver as a matter of law.

Generally, one who is connected with a crime is not an accomplice unless he "is liable to prosecution for the identical offense charged against the defendant . . . ." (Pen. Code, § 1111.) ■ However, where "the prosecution evidence discloses the existence of a conspiracy or agreement whereby the principal prosecution witnesses were to steal and defendant was to purchase the stolen property, it is both logical and reasonable to hold that they are accomplices in the offense or offenses resulting from execution of such plan." (*People* v. *Lima* (1944) 25 Cal.2d 573, 578 [154 P.2d 698]; see also, *People* v. *McKunes* (1975) 51 Cal.App.3d 487, 493 [124 Cal.Rptr. 126].) ■ The witness "must have guilty knowledge and intent with regard to the commission of the crime" charged against the defendant. (*People* v. *Duncan* (1960) 53 Cal.2d 803, 816 [3 Cal.Rptr. 351, 350 P.2d 103].) ■ Where the "thief and receiver conspire before the theft that the one shall steal and the other receive the stolen property from him, then they are accomplices. In such case, the thief is an accomplice in the crime of receiving stolen property, and the receiver an accomplice in the theft." (*People* v. *Brumback* (1957) 152 Cal.App.2d 386, 391 [314 P.2d 98], disapproved on other grounds, *People* v. *Weiss* (1958) 50 Cal.2d 535, 566 [327 P.2d 527].)

■ When warranted by the evidence, accomplice instructions must be given by the court, even though no request for them is made by the defendant. (*People* v. *Warren* (1940) 16 Cal.2d 103, 117 [104 P.2d 1024]; *People* v. *Cisneros, supra,* 34 Cal.App.3d 399, 413-414, and cases collected; *People* v. *Brown* (1970) 6 Cal.App.3d 619, 623-624 [86 Cal.Rptr. 149].) Moreover, where the undisputed evidence establishes complicity, the court must instruct the jury that the witness is an accomplice as a matter of law. (*People* v. *Duncan, supra,* 53 Cal.2d 803, 816.)

■ Defendant's conviction on count 4 was based on the testimony of Cain, an accomplice as a matter of law, Montegna and Reyes. The evidence makes clear that Montegna approached defendant on each occasion and requested that defendant obtain items for which Montegna retained a cash commission. Reyes, who bought the count 4 camper through Montegna, testified that the campers he had been looking for ranged in price from $1,000 to $2,000, the camper obtained by Montegna was worth $1,000 and that he had paid $750. He admitted that he was testifying under a grant of immunity. Although Reyes denied knowing that the camper would be stolen, the jury would have been entitled to infer that he did know. Montegna was apparently never asked whether he knew the merchandise he asked defendant to obtain would be stolen, but the circumstances of the transactions were hardly those of a legitimate second-hand market. The jury would have been entitled to infer that Montegna was an accomplice.

*Counts 9 and 10*

■ The reason which compels reversal of the conviction on count 4 applies, even more strongly, to counts 9 and 10. Both witnesses whose testimony supported the conviction on those counts were accomplices as a matter of law—Cain as a fellow thief, Tucker as a receiver of goods which he knew to be stolen.

In fact, it is questionable whether defendant's motion for a judgment of acquittal under section 1118.1 of the Penal Code should not have been granted on the basis that the People's case lacked corroboration as a matter of law. Certainly, no testimony other than that of the two accomplices was offered.

The People claim that there was some corroboration, pointing to an asserted similarity of defendant's modus operandi with respect to counts 1 and 2, as well as to certain photographs and documents received in evidence while Tucker was on the stand.

Since we must reverse on counts 9 and 10 for lack of an instruction to the effect that Tucker was an accomplice, we need not decide whether the corroboration was adequate. We merely note that in large part the relevance of the alleged corroborative evidence derives its foundational

basis from the testimony of Cain and Tucker.[3] *People* v. *Bowley* (1963) 59 Cal.2d 855, 862-863 [31 Cal.Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178], teaches us that "as Penal Code section 1111 prohibits conviction upon the testimony of an accomplice, so it also prohibits conviction upon evidence the foundation for which was supplied by an accomplice."

*Ineffectiveness of Counsel*

Our discussion of the trial court's failure to properly instruct the jury without request disposes of defendant's contention that his trial counsel was ineffective for failing to request adequate instructions. Although the discussion among counsel and the court concerning jury instructions reflects an apparent inability of defense counsel to see beyond CALJIC, since the court should have given the instructions even without request, we cannot conclude that defense counsel was legally ineffective in failing to insure that they were, in fact, given.

*Jailtime Credit*

Defendant contends in a pro per petition for writ of habeas corpus, which we treat as a supplemental brief, that he was not given full credit for time served in jail. He was sentenced, as noted, to consecutive terms, and given credit for 131 days spent in jail, but contends that the trial court erred in not ordering this credit to be applied to both sentences. Since we must reverse on counts 4, 9 and 10—the latter two comprising the consecutive sentence—we need not decide the issue.[4]

We note that the original judgment sentenced defendant to a concurrent term on counts 1 and 2. (See fn. 1.) These counts involved the same event—stealing a truck and camper—and defendant

---

[3]This statement may not be true as to certain DMV records which appear to be self-authenticating. It is, however, true with respect to the modus operandi of the theft of the Hamilton boat and trailer. Without Cain's testimony there would be no evidence on the method by which that theft was accomplished.

[4]The issue of jailtime credit will not arise unless defendant is retried, convicted and sentenced to a consecutive term or terms on count 4 or 9 or 10, and the sentencing judge declines to credit defendant with all jailtime served. Moreover, the 1976 amendment to Penal Code section 2900.5, subdivision (b) suggests a somewhat more expansive view of jailtime credit. (Stats. 1976, ch. 1045, § 2.) Finally, the effect of the Determinative Sentencing Law (Stats. 1976, ch. 1139) in general, and as applied to defendant, who was sentenced to prison July 1975, is not readily calculable.

should not have been convicted on both counts. The Attorney General agrees.

The judgment of conviction as to count 1 is affirmed; as to counts 2, 4, 9 and 10, it is reversed.

Stephens, J., and Hastings, J., concurred.